IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Evelyn Patterson,     Case No. 3:10CV2547
    Administrator of Estate of Linda Hicks,

    Plaintiff

v.     ORDER

City of Toledo, et al.,

    Defendants

This is a case about the alleged use of excessive force when Toledo police officers, responding to a call to a group home about a resident threatening others with a weapon, shot and killed decedent Linda Hicks.

This court has jurisdiction pursuant to 28 U.S.C. § 1331.

Pending are defendants Officer Diane Chandler, the City of Toledo, and the Toledo Police Department's motion for summary judgment. [Doc. 32]. For the following reasons, I grant defendants' motion.

**Background**

On December 14, 2009, Toledo police officers Diane Chandler and Rebecca Kenny were on routine patrol when they received a call that one of Marria's Adult Family Home's residents had a knife and was threatening other residents.

The officers were aware that Marria's was a group home with mentally ill residents, and Officer Chandler had responded to calls there before. Officer Chandler has had specialized Crisis Intervention Training (CIT), which included training in recognizing and dealing with the mentally ill.

While in route to Marria's, dispatch informed the officers that the resident did not have a knife but actually had a pair of scissors.

On the officers' arrival at Marria's, a caretaker met with them; she told them that the resident, the decedent Linda Hicks, had not taken her medication and was upstairs with scissors. The caretaker exited the home and waited outside while the officers went inside and up the stairs.

At the top of the stairs, Officer Kenny took out her taser, while Officer Chandler took out her gun. The officers saw that Hicks' bedroom door was closed. Officer Chandler announced her presence, opened the door, and saw Hicks lying on her bed. Hicks was a sixty-two year-old woman, 5'7" tall, weighing 240 pounds. The officers entered the bedroom, asked Hicks to show her hands, and attempted to engage Hicks in discussion as she lay in bed; Hicks was unresponsive.

Still trying to get Hicks to respond, the officers also nudged her with their feet. They repeatedly asked her to show her hands. Hicks refused, making statements several times to the effect of, "Fuck you, you're going to have to shoot me."

As Hicks remained in her bed, Officer Kenny attempted to tase Hicks from a distance, but was unable to deploy her taser successfully. Officer Chandler got her taser out, while Officer Kenny then attempted to tase Hicks by applying her taser directly to Hicks' leg in "drive stun" mode. The tasing attempt was not successful – it appeared to have some effect on Hicks, but did not immobilize her. She then jumped out of the bed, with the scissors in her hand.

After Hicks got out of her bed, Officer Chandler began to backpedal and both she and Officer Kenny were able to back out from the bedroom and into the hallway. At some point, Officer Chandler dropped her taser, and drew her gun. Hicks was following after them, with the scissors in hand, and was moving out from the bedroom doorway.

At that point, Officer Kenny had taken steps down the hallway and began to descend the stairs towards the lower level. Officer Chandler also backpedaled down the hallway while continuing to face Hicks' bedroom. Officer Chandler had the entrance to the staircase at her back as Hicks was advancing toward her, with the scissors in her hand. Officer Chandler then fired the shots that killed Hicks.

On November 8, 2010, Evelyn Patterson, as administrator of the Estate of Linda Hicks, filed a complaint in this court under 42 U.S.C. § 1983 alleging constitutional violations against the City of Toledo and the Toledo Police Department, individual claims against Officer Chandler for excessive force, and several state law claims, including wrongful death and gross negligence.

**Standard of Review**

A party is entitled to summary judgment on motion under Fed. R. Civ. P. 56 where the opposing party fails to show the existence of an essential element for which that party bears the burden of proof. *Celotex Corp. v. Cartrett*, 477 U.S. 317, 322 (1986). The movant must initially show the absence of a genuine issue of material fact. Id. at 323.

Once the movant meets that initial burden, the "burden shifts to the nonmoving party [to] set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)). Rule 56(e) "requires the nonmoving party to

go beyond the [unverified] pleadings" and submit admissible evidence supporting its position. *Celotex*, *supra*, 477 U.S. at 324.

In deciding a motion for summary judgment, the court must accept the opponent's evidence as true and construe all evidence in the opponent's favor. *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 456 (1992). The movant can prevail only if the materials offered in support of the motion show there is no genuine issue of a material fact. *Celotex*, *supra*, 477 U.S. at 323.

## Discussion

### A. Officer Diane Chandler

#### 1. Constitutional Claims under 42 U.S.C. § 1983

Public officials are entitled to qualified immunity when "'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). This doctrine balances "the need to hold public officials accountable when they exercise power irresponsibly" against "the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id.*

My analysis of qualified immunity is two-pronged: first, I must decide whether the plaintiff has alleged a violation of a constitutional right; and second, whether the right at issue was clearly established at the time of the alleged misconduct. *Id.* at 232. It does not matter which prong I decide first; I must use my discretion "in light of the circumstances in the particular case at hand." *Id.* at 236.

#### a. Constitutional Violation

Plaintiff alleges Officer Chandler used excessive force, in violation of the decedent's rights under the Fourth Amendment.

Courts determine whether a police officer's actions exceeded the bounds of the Fourth Amendment by applying an "objective reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 396 (1989); *Smith v. Freland*, 954 F.2d 343, 345 (6th Cir. 1992). The Supreme Court has held that a police officer's use of deadly force is reasonable where "the office has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others[.]" *Tennessee v. Garner*, 471 U.S. 1, 11 (1985); *Freland*, *supra*, 954 F.2d at 346. The question of reasonableness is one that requires courts to look at the "totality of the circumstances." *Dickerson v. McClellan*, 101 F.3d 1151, 1161 (6th Cir. 1996) (citing *Garner*, *supra*, 471 U.S. at 8-9). A court must make this determination "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, *supra*, 490 U.S. at 396.

Plaintiff argues that Officer Chandler's actions, beginning with her actions on first entering Hicks' room, were unreasonable. In support of this, plaintiff provides an affidavit from Dr. R. Paul McCauley, a former municipal police officer and trainer, and current professor of criminology. Dr. McCauley states that:

> Officer Chandler's respective actions and/or inactions in leaving the cover of the closed door, approaching Ms. Hicks, a known Emotionally Disturbed Person (EDP), and pressing Ms. Hicks to engage in discussion, nudging Ms. Hicks with her foot, participation in an effort to Taser Ms. Hicks as she lie [*sic*] in her bed holding an edged weapon, and remaining facing Ms. Hicks in the hallway rather than pursuing reasonably available means of establishing tactical cover, deescalating the tensions, and retreating to safety via the stairs before using deadly force created an unreasonable risk of physical harm to Ms. Hicks, which did in fact occur.

[Doc. 35, Exh. 5, p. 3].

Dr. McCauley's analysis is flawed in many respects, not the least of which is his failure to speak with any particularity to this incident beyond the recitation of events listed above. Even if plaintiff was correct in alleging a question of fact of the reasonableness of Officer Chandler's initial actions upon entering Hicks' room, it does not bear on the immediate question of reasonableness in using deadly force.

The Sixth Circuit has recognized that in evaluating the totality of the circumstances, a court must look at the "'split-second judgments made immediately before the officer used allegedly excessive force.'" *Bletz v. Gribble*, 641 F.3d 743, 752 (6th Cir. 2011) (quoting *Livermore ex rel. Rohm v. Lubelan*, 476 F.3d 397, 407 (6th Cir. 2007)). Contrary to plaintiff's assertions, while the events were in "close temporal proximity," it is not so difficult to segment the events between Officer Chandler's actions on first entering Hicks' room, and then her actions after Hicks rose from her bed. *See Claybrook v. Birchwell*, 274 F.3d 1098, 1105 (6th Cir. 2001) (separating officers' approach and confrontation of the suspect from two subsequent firefights even though "the officers' decision to approach [the suspect] in the manner they did was in clear contravention of Metro Nashville Police Department policy").

Looking at Officer Chandler's actions after Hicks rose from her bed, it is clear Officer Chandler acted reasonably. Hicks had been continuously unresponsive, and jumped up from her bed with scissors in her hand. Officers Chandler and Kenny backed out of the room while Hicks advanced on them, scissors still in hand, raised above her head. Officer Kenny was the first out of the room, and was able to get a few stairs down, while Officer Chandler was only able to get in the hallway in the time Hicks had gotten to the doorway and was still advancing upon the officers.

6


Plaintiff argues that if Officer Kenny was able to retreat down the stairs, Officer Chandler should have been able to do the same.

This is a mischaracterization of the temporal and physical circumstances. The space in the hallway immediately outside the door was so tight that Officer Kenny had to move down the stairs so Officer Chandler would not trip over her as she too retreated. Officer Chandler was in imminent danger of being stabbed, and a "police officer . . . is not required to retreat before a display of force by the adversary." *McKenzie v. City of Detroit*, 74 F. App'x 553, 558 (6th Cir. 2003) (unpublished disposition).

Plaintiff's attempt to argue that Officer Chandler's actions were clearly unreasonable as evidenced by Officer Kenny's failure to shoot is similarly flawed. First, plaintiff cites to no law which states that when one officer uses deadly force and another does not, the second officer's actions serve to show that the first officer's actions were unreasonable.

Second, in the particular circumstances of this case, applying such a requirement would be unreasonable in and of itself. Officer Kenny, in describing her retreat, stated she went down the stairs to clear a path for Officer Chandler to retreat, and that when the shooting occurred, she could only see Chandler's back. Any attempt by Kenny to fire her weapon would have endangered Chandler.

"The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, *supra*, 490 U.S. at 396-97. In this case, the circumstances involved a police officer faced with a hostile and non-compliant suspect, armed with scissors, advancing upon her in a small and constricted space. Officer

Chandler's decision to use deadly force was not objectively unreasonable and did not violate Hicks' constitutional rights. Officer Chandler is entitled to qualified immunity against plaintiff's claims under 42 U.S.C. § 1983.

### 2. State Claims: Gross Negligence, Assault and Battery, Wrongful Death

Plaintiff also asserts several Ohio state law claims against Officer Chandler, including gross negligence, assault and battery, and wrongful death. Plaintiff acknowledges Officer Chandler is normally entitled to immunity from these claims under O.R.C. § 2744.03(A)(6), which states that an "employee is immune from liability unless . . . (b) The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner."

Plaintiff argues Officer Chandler's actions were reckless, and therefore she is not entitled to statutory immunity. Plaintiff is incorrect. To show wanton or reckless misconduct, there has to be a "failure to exercise any care whatsoever." *Fabrey v. McDonald Vill. Police Dep't*, 70 Ohio St.3d 351, 356 (1994). The evidence must establish "a disposition to perversity" - in other words, "a tendency to turn away from what is right or good."*Justice v. Marion Cnty. Sheriff's Dep't*, 2000 WL 32025, *6 (6th Cir.) (unpublished disposition).

While the question of whether a political subdivision employee's actions were wanton or reckless is "'normally a jury question,'" that is not the case when "reasonable minds cannot differ about the outcome."*Id.* (quoting *Fabrey*, *supra*, 70 Ohio St.3d at 356). Officer Chandler's actions did not exhibit a "tendency to turn away from what is right or good." Officer Chandler was confronted by an individual advancing toward her with scissors in hand and reasonably believed she was in imminent danger of being stabbed. Her decision to exercise deadly force was objectively reasonable. No rational trier of fact could find that she acted  wantonly or recklessly.

Officer Chandler is entitled to statutory immunity from plaintiff's state law claims.

### B. City of Toledo and the Toledo Police Department[1]

### 1. Constitutional Claims under 42 U.S.C. § 1983

Plaintiff claims the Toledo Police Department and the City of Toledo failed to properly train its police officers.[2]

"[W]hen execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury . . . the government as an entity is responsible under § 1983." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). A "systemic failure to train police officers adequately" can "lead to city liability." *Gregory v. City of Louisville*, 444 F.3d 725, 753 (6th Cir. 2006) (citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). This requires the plaintiff to show that "the training program at issue is inadequate to the tasks that officers must perform; that the inadequacy is the result of the city's deliberate indifference; and that the inadequacy is closely related to or actually caused the plaintiff's injury." *Russo v. City of Cincinnati*, 953 F.2d 1036, 1046 (6th Cir. 1992) (internal quotation marks omitted).

The Sixth Circuit emphasizes that "[o]nly when the failure to train amounts to 'deliberate indifference' on behalf of the city toward its inhabitants, however, will failure to train lead to city

---

[1] Defendants argue this action cannot be maintained against the Toledo Police Department, as it is a municipal department not subject to suit under 42 U.S.C. § 1983. Defendants are incorrect. The Sixth Circuit has repeatedly treated claims under § 1983 against city police departments as claims against the city itself. *See, e.g.*, *Thomas v. City of Chattanooga*, 398 F.3d 426, 428-30 (6th Cir. 2005).

[2] Plaintiff originally also claimed a failure to maintain proper policies or procedures as to the use of force; plaintiff appears to have abandoned that argument, as evidenced by their failure to address the claim in any of their responses to defendants' motion for summary judgment.

liability under § 1983." *Gregory*, *supra*, 444 F.3d at 753 (quoting *Harris*, *supra*, 489 U.S. at 389). Plaintiff can show such a "deliberate indifference" by demonstrating that a city's failure to train "has the 'highly predictable consequence' of constitutional violations of the sort Plaintiff suffered." *Gregory*, *supra*, 444 F.3d at 753 (quoting *Cherrington v. Skeeter*, 344 F.3d 631, 646 (6th Cir. 2003)).

Plaintiff argues the Toledo Police Department should have provided different training to its officers with respect to their interactions with mentally ill individuals, and this inadequacy was "likely to and in fact did result in a violation of constitutional rights." Plaintiff fails, however, to show a connection between such an alleged failure to train and Hicks' death. As discussed above, Officer Chandler's initial handling of Hicks, a mentally disturbed individual, is disconnected from Officer Chandler's ultimate use of deadly force. A "sudden, unprovoked, unanticipated violent assault by a mentally ill person breaks any casual link between resulting injury or death and a claim of inadequate training." *Abdi v. Karnes*, 556 F.Supp.2d 804, 818 (S.D. Ohio 2008).

Additionally, Dr. McCauley's broad assertions that Officer Chandler's actions were "contrary to accepted police practices," without more, is insufficient to show that the City of Toledo's current training "has a highly predictable consequence of constitutional violations." *Gregory*, *supra*, 444 F.3d at 753 (internal quotation marks omitted).

Plaintiff has failed to demonstrate that the alleged failure to train police officers with respect to their interactions with mentally ill individuals, amounted to deliberate indifference.

### 2. State Claim: Wrongful Death

Plaintiff also asserts an Ohio state law claim of wrongful death against the City of Toledo and the Toledo Police Department. Defendants maintain they are entitled to immunity from this

claim under O.R.C. § 2744.02, which states that "a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of . . . an employee of the political subdivision in connection with a governmental or proprietary function." *Id.* at (A)(1). Providing police services is a "governmental function." O.R.C. § 2744.01(C)(2)(a).

There are certain exceptions to this grant of absolute immunity, listed in O.R.C. § 2744.02(B). Plaintiffs do not contend any of these exceptions apply, but instead argue the statutory grant of immunity is unconstitutional, citing *Estate of Owensby v. City of Cincinnati*, 385 F.Supp.2d 619, 623 (S.D. Ohio 2004). Defendants are correct in stating that this is not the prevailing interpretation of the statute. As the Sixth Circuit stated in affirming a district court's dismissal of claims of O.R.C. § 2744's unconstitutionality:

> The district court properly held that the Liability Act, Ohio Rev.Code §§ 2744.02, 2744.03, does not violate article I, sections 5 and 16, of the Ohio constitution because the Supreme Court of Ohio has never held the statute unconstitutional and because Ohio's intermediate courts are unanimous in upholding the statute.
> 
> \* \* \*
> 
> No majority decision of the Supreme Court of Ohio has ever held the Liability Act unconstitutional. On the contrary, the law of the supreme court remains that the statute is constitutional . . . The supreme court's dicta in *Butler v. Jordan*, 92 Ohio St.3d 354, 750 N.E.2d 554 (Ohio 2001), did not work a change because it was pronounced by a plurality of the court. . . . The plurality dicta does not represent the view of the majority of the Supreme Court of Ohio and was not even applied by the plurality in that case, and thus it cannot be said that it represents Ohio law. Because "the state's highest court has not decided the applicable law, then [this] court must ascertain the state law from 'all relevant data,' " including the state's intermediate court decisions.
> 
> Every decision of the Court of Appeals of Ohio that has entertained challenges to the Liability Act has found the statute constitutional. If "the only precedent is from the state's intermediate appellate courts, the intermediate court's decision should be followed absent a strong showing that the state supreme court would act in a different manner." Because a majority of the supreme court has never held that the Liability Act is unconstitutional, there has been no showing that the supreme court

11

would act differently from the courts of appeals. Therefore, we read Ohio's law in its current state to provide that the Liability Act is constitutional.

*Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 97-98 (6th Cir. 2006) (internal citations omitted).

As plaintiff has not pointed out any other reason defendants are not entitled to statutory immunity, O.R.C. § 2744.02 applies, and defendants cannot be liable for this claim.

**Conclusion**

For the foregoing reasons it is therefore,

ORDERED THAT defendants Officer Diane Chandler, City of Toledo, and the Toledo Police Department's motions for summary judgment [Doc. 32] be, and the same hereby is granted.

So ordered.

> s/James G. Carr
> Sr. United States District Judge